UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BAILEE JEAN BUTTERWORTH,<br><br>          Plaintiff,<br><br>     v.<br><br>KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>          Defendant. | Case No.  1:21-cv-00374-ADA-HBK<br><br>FINDINGS AND RECOMMENDATIONS  TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENY DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT, AND REMAND CASE TO THE COMMISSIONER OF SOCIAL SECURITY[1]<br><br>FOURTEEN-DAY OBJECTION PERIOD<br><br>(Doc. No.  22, 23) |

Bailee Jean Butterworth ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income under the Social Security Act. (Doc. No. 1). The matter is currently before the Court on the parties' briefs, which were submitted without oral argument. (Doc. Nos. 22-23). For the reasons stated, the undersigned RECOMMENDS granting Plaintiff's motion for summary judgment, denying the Commissioner's cross-motion for summary judgment, and remanding for further administrative proceedings.

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2022).

## I. JURISDICTION

Plaintiff filed for supplemental security income on December 21, 2017, alleging a disability onset date of November 11, 2017. (AR 221-23). Benefits were denied initially (AR 113-27, 144-48) and upon reconsideration (AR 128-143, 155-60). A hearing was conducted before an Administrative Law Judge ("ALJ") on February 6, 2020. (AR 72-112). Plaintiff was represented by counsel and testified at the hearing. (*Id*.). On March 16, 2020, the ALJ issued an unfavorable decision (AR 12-39), and on August 14, 2020, the Appeals Council denied review. (AR 6-11). The matter is now before this Court pursuant to 42 U.S.C. § 1383(c)(3).

## II. BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 28 years old at the time of the hearing. (AR 77). She completed high school and "some college" to become a paralegal. (AR 77). She lives with her mother and fiancée. (AR 85). Plaintiff has work history as an assistant manager in retail, retail sales clerk, and customer service clerk. (AR 77-80, 108). Plaintiff testified that she could no longer work after her skull fracture and subsequent seizure disorder. (AR 77). She reported that on the date of disability onset she sustained a subdural fracture in her brain that caused bleeding in her skull and two grand mal seizures. (AR 80-81). Plaintiff testified that since her injury she only can stay focused for 15 minutes at a time, she "can't remember anything," and she cannot count but can manage her bank account. (AR 83, 86). She reported that she has about four absence seizures a day, as well as "stress seizures" two to six times a day. (AR 86-88). The absence seizures last between 30 seconds and two minutes, and she must sleep for three to four hours after they occur in order to recover. (AR 87). The stress seizures last 4 to 5 minutes, and up to 20 minutes, and are caused by overexertion or stress. (AR 88-89). Plaintiff testified that she can lift 10 pounds at most, stand for 10 to 12 minutes before she has to sit, and sit for 30 minutes before she has to stand up or lay down. (AR 89, 91). She uses a walker at home for stability because she has a "very dizzy equilibrium." (AR 89-90). Plaintiff also testified that she has "manic OCD" and "manic

2

1  bipolar," and has to keep her stress down in order to avoid seizures. (AR 93-95). She reported
2  that she has anger outbursts every week but medication has helped. (AR 96-98).

Plaintiff's mother testified that Plaintiff has absence seizures where she "goes blank" in mid-conversation, at the same frequency rate described by Plaintiff; Plaintiff lays down the "majority of the day"; Plaintiff needs frequent reminders because of memory problems; Plaintiff has yelling and crying spells a few times a week; Plaintiff has balance and gait problems; and Plaintiff has trouble focusing and rapid "outbursts." (AR 101-04).

### III. STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id.* An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

### IV. SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of

3

the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. See 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her

limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## V.  ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since December 21, 2017, the application date. (AR 17). At step two, the ALJ found that Plaintiff has the following severe impairments: irritable bowel syndrome, chronic interstitial cystitis, traumatic brain injury, seizures, bipolar disorder, mood disorder NOS, generalized anxiety disorder, obsessive compulsive disorder, borderline intellectual functioning, and cannabis use disorder. (AR 17). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 18). The ALJ then found that Plaintiff has the RFC:

5

>>to perform sedentary work as defined in 20 CFR 416.967(a) except the claimant can never climb ladders, ropes, or scaffolds and can have no exposure to hazards. She is limited to simple, routine tasks with no work interactions with the public and occasional work interactions with coworkers and supervisors.

(AR 21). At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (AR 32). At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including semiconductor bonder, laminator, and taper, printed circuit board layout. (AR 32-33). On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since December 21, 2017, the date the application was filed. (AR 33).

## VI.   ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act. (Doc. No. 1). Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly considered the medical opinion evidence;
2. Whether the physical RFC is supported by substantial evidence;
3. Whether the RFC is supported by substantial evidence given the "new and material evidence" submitted to the Appeals Council; and
4. Whether the ALJ properly considered Plaintiff's symptom claims.

(Doc. No. 22 at 11-30).

## VII.   DISCUSSION

### A. Medical Opinions

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…" *Revisions to Rules*, 2017 WL

168819, 82 Fed. Reg. 5844, at 5867-68; see 20 C.F.R. § 404.1520c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources.  20 C.F.R. § 404.1520c(a) and (b).  The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements").  20 C.F.R. § 404.1520c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered.  20 C.F.R. § 404.1520c(b)(2).  Supportability and consistency are explained in the regulations:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2).  The ALJ may, but is not required to, explain how the other factors were considered.  20 C.F.R. § 404.1520c(b)(2).  However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. § 404.1520c(b)(3).

The Ninth Circuit has additionally held that the new regulatory framework displaces the longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining doctor's opinion.  *Woods v. Kijakazi*, 32

7

F.4th 785 (9th Cir. 2022).  Nonetheless, in rejecting an examining or treating doctor's opinion as unsupported or inconsistent, an ALJ must still provide an explanation supported by substantial evidence.  *Id*. at 792.  This means that the ALJ "must 'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." *Id*. (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

      Plaintiff assigns error to the ALJ for rejecting the physical and mental health opinions of Plaintiff's treating neurologist Gunjan Narwani, M.D.  (Doc. No. 22 at 11-22).  First, on December 2018, Dr. Narwani completed a mental residual functional capacity questionnaire that opined Plaintiff was precluded for 15% or more of an 8-hour word day from remembering locations and work-like procedures; understanding and remembering very short and simple instructions; understanding and remembering detailed instructions; carrying out detailed instructions; maintaining attention and concentration for extended periods of time; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; sustaining an ordinary routine without special supervision; working in coordination with or in proximity to others without being distracted by them; making simple work-related decisions; completing a normal workday and workweek without interruptions from psychologically based symptoms, and performing at a consistent pace without an unreasonable number and length of rest periods; accepting instructions and responding appropriately to critics [sic] from supervisors; getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; traveling to unfamiliar places or using public transportation; and setting realistic goals or making plans independently of others.  (AR 720-21).  Dr. Narwani also opined that Plaintiff is likely to be absent from work as a result of her impairments 5 or more days per month and is likely to be unable to complete an 8-hour workday as a result of her impairments 5 days or more per month.  (AR 722).  The ALJ found Dr. Narwani's mental health opinion not persuasive because (1) her opinion is unsupported and without explanation for the severity of the findings opined, and (2) it is "not consistent with the overall record."  (AR 31).  The ALJ also noted, without citation to the record, that Dr. Narwani did not treat Plaintiff for mental health

issues, and her records do not include abnormal mental status examinations and "in fact show normal neurological findings." (AR 31).

Second, also in December 2018, Dr. Narwani completed a physical medical source statement, opining that in a competitive work situation, Plaintiff could sit for more than 2 hours at one time before needing to get up; stand for 10 at one time minutes before needing to change positions; could stand/walk for less than 2 hours total in an 8-hour workday; could sit for at least 6 hours in an 8-hour workday; rarely left up to 10 pounds; never lift more than 20 pounds; rarely twist, stoop, crouch, squat and climb stairs; never climb ladders; reach overhead for 50% of an 8-hour workday; is incapable of even low stress work; would be absent from work more than four days per month as a result of her impairments; and would have to take 2 unscheduled 15 minute breaks in every work day. (AR 723-26). The ALJ found Dr. Narwani's opinion as to Plaintiff's physical limitations unpersuasive because it is "inconsistent with the other evidence of record and there is no explanation provided to support her pronunciations." (AR 31). The ALJ also noted that Dr. Narwani's treatment records included "normal findings" inconsistent with the opined limitations; the opinion indicated Plaintiff had "normal exams"; and "it appears [Dr. Narwani] is basing her opinion on [Plaintiff's] subjective complaints rather than the objective findings." (AR 31).

In considering the consistency factor as to both of Dr. Narwani's opinions, the ALJ generally found they were not consistent with the "overall evidence" and "other evidence of record," respectively. (AR 31). As noted by Plaintiff, the new regulations "explicitly require[] an explanation of how the ALJ considered the supportability and consistency of an opinion. Harmonizing this requirement with current Ninth Circuit law prohibiting cherry-picking and requiring a detailed and thorough summary of conflicting evidence, and an interpretation and findings thereon, the ALJ must explicitly address evidence that supports and is consistent with a less-than-persuasive medical opinion, and should this evidence fail to persuade, the ALJ must provide legally sufficient reasons." (Doc. No. 22 at 16 (citing *Gonzales v. Kijakazi*, 2022 WL 267438, at *12 (E.D. Cal. Jan. 28, 2022) (internal citations omitted)). Here, as to both the mental and physical opinions, the ALJ cites only to the opinion itself without any reference to specific

9

1  evidence from the record that is inconsistent with the precise limitations opined by Dr. Narwani,
2  or explanation as to how the "overall evidence" was inconsistent with those limitations. (*See* AR
3  31). This is error. *See Woods*, 32 F.4th at 792 (in rejecting an examining or treating doctor's
4  opinion as unsupported or inconsistent under the new regulations, an ALJ must still provide an
5  explanation supported by substantial evidence). Of particular note, as to the opined mental
6  limitations, the ALJ references "severe mental limitation in almost all categories" but fails to
7  outline or explain how the "overall evidence" is inconsistent with any specific opined limitation,
8  including that Plaintiff is likely to be absent from work as a result of her impairments 5 or more
9  days per month and is likely to be unable to complete an 8-hour work day as a result of her
10 impairments 5 days or more per month. (*See id*, 110-11 (vocational expert testimony that an
11 individual with absenteeism four days out of a typical month including days where the individual
12 would have to leave work early "would be considered excessive by employers and preclude all
13 work"), 721).

14       Defendant generally argues that the Court should uphold the ALJ's evaluation of Dr.
15 Narwani's opinion and "reject Plaintiff's request for an alternative interpretation of the medical
16 opinion evidence." (Doc. No. 23 at 7). In support of the argument, Defendant string cites mental
17 status examinations in the record finding normal mood, affect, judgment, and thought content;
18 and generally contends the assessed limitations "lacked any objective support." (*Id*. (citing AR
19 540, 698, 748, 753, 780, 868 (also finding anxious mood and affect, and fair
20 attention/concentration), 870 (also noting fair attention/concentration), 872 (also noting upset
21 mood, anxious affect, and fair attention/concentration), 874 (also noting "not good" mood,
22 anxious affect, and fair attention/concentration), 877, 879 (also noting stressed mood, tense affect,
23 and fair attention/concentration)). (*Id*.). Initially the Court notes that the mental health records
24 cited by Defendant were not cited by the ALJ as evidence of inconsistency between Dr.
25 Narwani's opinion and the overall record. (*See* AR 31); *Bray v. Comm'r of Soc. Sec. Admin.*, 554
26 F.3d 1219, 1226 (9th Cir. 2009) (the Court "review[s] the ALJ's decision based on the reasoning
27 and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what
28 the adjudicator may have been thinking."). Further, as noted by Plaintiff and observed in the

mental health treatment notes cited by Defendant *supra*, while the longitudinal record contains evidence of "normal" mental and physical clinical findings, the record also includes "abnormal" mental status findings of only fair attention/concentration, anxious mood, anxious affect, tearful affect, impaired remote memory, and depressed mood. (AR 804-05, 809-10 (noting obsessive compulsive thought content), 868, 870, 872, 874, 877, 879).

When considering the medical opinion evidence, the ALJ must do more than state a conclusion; rather, the ALJ must "set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Brown-Hunter*, 806 F.3d at 495 (a court "cannot substitute [the court's] conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions.  Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence.").  "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725.  In addition, as noted above, the Ninth Circuit recently clarified that under the new regulations for considering medical evidence, "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must 'articulate … how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Woods*, 32 F.4th at 792 (internal citations omitted).  Here, the ALJ fails to explain how any of the specific mental or physical limitations assessed by Dr. Narwani are inconsistent with the "overall evidence" or "other evidence of record"; thus, the ALJ's finding that Dr. Narwani's opinion was not persuasive because of an alleged inconsistency with the record is not supported by substantial evidence.

In considering the supportability of Dr. Narwani's assessment of Plaintiff's physical limitations, the ALJ found Dr. Narwani's opinion unsupported because her treatment records "show normal findings", there is "no explanation provided to support her pronunciations," she indicated Plaintiff had "normal exams," and it "appears she is basing her opinion on the

11

1    claimant's subjective complaints rather than the objective findings." (AR 31). Plaintiff argues
2    the ALJ failed to "specify what 'abnormal' findings she expects to be documented by Dr.
3    Narwani, when Dr. Narwani had not witnessed her seizures, but had prescribed multiple doses of
4    [] anti-convulsant medication, order[ed] a MRI documenting findings of 'small regions of
5    encephalomalacia in the anterior/inferior frontal lobes bilaterally, and ordering a 5-day
6    ambulatory EEG. As such, Dr. Narwani's limitations were . . . well supported by her own
7    extensive treatment." (Doc. No. 22 at 16). Defendant does not respond to Plaintiff's argument
8    aside from generally arguing the ALJ's analysis of supportability was proper and well-supported.
9    (Doc. No. 23 at 8). As above, when considering the medical opinion evidence, the ALJ must do
10   more than state a conclusion; rather, the ALJ must "set forth his own interpretations and explain
11   why they, rather than the doctors,' are correct." *Reddick*, 157 F.3d at 725; *Brown-Hunter*, 806
12   F.3d at 495. Here, the ALJ fails to set forth the "normal" findings from Dr. Narwani's
13   examinations of Plaintiff, nor does she explain with requisite specificity how the treatment
14   prescribed by Dr. Narwani, including anti-seizure medication and ongoing objective testing, does
15   not provide support the physical limitations outlined in her opinion. Moreover, while the ALJ
16   points to the notes that indicate Plaintiff had "normal exams" in one section of the opinion, the
17   Court's review of Dr. Narwani's opinion indicates that she checked "yes" in response to the
18   question "Are your patient's impairments (physical impairments plus any emotional impairments)
19   as demonstrated by signs/clinical findings and laboratory or test results reasonably consistent with
20   the symptoms and functional limitations described above in this evaluation?" (AR 723, 726).
21   Based on the foregoing, the ALJ's supportability finding as to Dr. Narwani's assessed physical
22   limitations in not supported by substantial evidence.
23        Finally, as to the supportability of Dr. Narwani's mental health opinion, the ALJ generally
24   found that the opinion was "was unsupported and without explanation for the severity of the
25   findings opined" and "her records do not document abnormal mental status and in fact show
26   normal neurological findings." (AR 31). It was reasonable for the ALJ to note the lack of
27   explanation for the mental health limitations assessed by Dr. Narwani within her opinion when
28   considering the supportability of her opinion; however, in light of the need to reconsider the

consistency of both opinions and the supportability of Dr. Narwani's opinion as to Plaintiff's physical limitations, as discussed above, the ALJ should reconsider Dr. Narwani's opinions on remand.

For all of these reasons, the ALJ's rejection of Dr. Narwani's opinions under the new regulations is not supported by substantial evidence. On remand the ALJ must reconsider Dr. Narwani's opinions.

**B. Additional Assignments of Error**

Plaintiff additionally argues that the physical RFC determination is not supported by substantial evidence; the RFC is not supported by substantial evidence given new and material evidence submitted to the Appeals Council; and that the ALJ failed to provide clear and convincing reasons to reject Plaintiff's symptom claims. (Doc. No. 22 at 22-30). Because the analysis of these issues is at least partially dependent on the ALJ's reevaluation of the medical evidence, including the medical opinions, the undersigned declines to address these challenges in detail here. In addition, it is unnecessary for the Court to make any findings regarding "new and material" evidence submitted to the Appeals Council, as it will now be part of the record considered on remand. *See Brewes v. Comm'r of Soc. Sec.*, 682 F.3d 1157, 1160 (9th Cir. 2012) (when a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence). On remand, the ALJ is instructed to reconsider the medical opinion evidence and conduct a new sequential analysis considering all of the evidence in the record, including Plaintiff's symptom claims, and a reassess the RFC and step five finding if necessary.

**C. Remedy**

Plaintiff contends that the Court should remand for a payment of benefits, or in the alternative, the Court should remand for further proceedings. (Doc. No. 22 at 30). The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate

award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Sec'y of Health & Human Servs*., 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome[.]" *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison*, 759 F.3d at 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

The Court finds in this case that further administrative proceedings are appropriate. *See Treichler v. Comm'r of Soc. Sec. Admin*., 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose). Here, the ALJ improperly considered the medical opinion evidence, which calls into question whether the assessed RFC, and resulting hypothetical propounded to the vocational expert, are supported by substantial evidence. "Where," as here, "there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler*, 775 F.3d at 1101. Thus, the undersigned recommends the case be remanded for further proceedings.

On remand, the ALJ should reconsider the medical opinion evidence, and provide legally sufficient reasons for evaluating the opinions, supported by substantial evidence. If necessary, the ALJ should order additional consultative examinations and, if appropriate, take additional testimony from medical experts. The ALJ should also reevaluate Plaintiff's symptom claims. Finally, the ALJ should reconsider the remaining steps in the sequential analysis, reassess Plaintiff's RFC and, if necessary, take additional testimony from a vocational expert which includes all of the limitations credited by the ALJ.

////

Accordingly, it is **RECOMMENDED**:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 22) be GRANTED.
2. Defendant's Cross Motion for Summary Judgment (Doc. No. 23) be DENIED.
3. Pursuant to sentence four of 42 U.S.C.§ 405(g), the Court REVERSE the Commissioner's decision and REMAND this case back to the Commissioner of Social Security for further proceedings consistent with this Order.
4. The district court direct the Clerk to enter judgment in favor of the Plaintiff, terminate any pending motions/deadlines, and close this case.

## NOTICE TO PARTIES

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these findings and recommendations, a party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated: July 13, 2023

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE